*1082 The opinion of the court was delivered by
Miller, J.
This suit is for property claimed under an alleged sale of the Caddo Levee Board, the Shreveport Rod and Gun Club, ■plaintiff, and another organization, the Shreveport Gun Club, each ••claiming under that sale, and the board denying it made any sale.
It appears that a proposition was made to the Levee Board by W. B. Jacobs, S. J. Enders, W. B. Jenkins and Mr. Wells for the purchase of the property, and the board accepted the offer by a resolution referring to the proposition as coming from the Gun Club. This was followed by the sale, by authentic act, to Mr. Jacobs and his associates, Enders, Jenkins and Penick, for the price paid them. Soon after these purchasers, with others, organized a corporation under the name of the Shreveport Gun Club, and to this club the purchasers from the board sold the property, the president of the board ratifying the sale. An unincorporated association, under the name of the Shreveport Rod and Gun Club had existed in Shreveport for years, with a large membership, including Jacobs and Enders, two of the purchasers of the land. The contention of the plaintiff is, that as this unincorporated gun club was the only organization bearing that name in existence when the board accepted the offer to buy of the “ Gun Club,” therefore that club was intended and merged as is this unincorporated gun club into the corporation now plaintiff, that the plaintiff is entitled to the land.
The Levee Board, originally one of the defendants, finding itself confronted by two claimants each contending for the property under the resolution for a sale to the Gun Club, concluded to dispute the pretensions of both. In this connection it may be stated the board had an agent for the sale of its land, and we gather from the testimony he had been spoken to by various parties, those who became purchasers and others, in reference to the sale of this property. It was by this agent the offer from the Jacobs party came before the board. We gather the first offer was lower than the price — eleven cents per acre — for which the land was afterward sold. At the first meeting, the board dealing with the offer from the Jacobs party, referred it to the committee and ' adopted a resolution ■ that all sales ■should be ratified by the board; then, on August 20, after receiving the committee's report, came the resolution accepting the offer of the Gun Club, ten cents for eleven thousand acres, and the sale to the Jacobs party followed. On the 19th of September, 1895, the *1083 president of the board ratified the sale of the land by the Jacobs party to the incorporated club, and the action of the board closes with a resolution of the 20th September, 1895, in instructing the board’s attorneys to (take proceedings) annual the title given to the •Jacobs party. In this condition, the intervention was filed in the pending litigation between the Shreveport Rod and Gun Olub ■et als. against the levee board, the Shreveport Gun Olub et als.
The pleadings on the part of the plaintiff, the Shreveport Rod and ■Gun Olub, in substance, assert title under the resolution of the board .accepting the offer of the Gun Olub; attacks the title of the Jacobs party, derived from the board and the ratification by the president as not authorized and ultra vires; and prays the board be decreed to ■convey title to the plaintiff. The intervention charges the board, ignorant of the value of the land, was imposed upon; that sold for ■eleven hundred dollars, the property worth five thousand dollars, and prays that the sale be avoided for lesion, or the purchasers be condemned to pay the difference between the alleged value and price, and along with this the board alleges that the sale was not authorized’to the purchasers. The resolution of the lower court was in favor of the board, and, as stated, the case is here on the appeals of the clubs.
The title of the Shreveport Gun Olub being assailed as not authorized by the Levee Board, and hence a fraud on the rights of the ■other club, the plaintiff, the record contains a mass of testimony offered by the defendant club to show that the sale was made to those who made the offer accepted by the board and intended by the resolution. To all this testimony the plaintiff objected. A large portion of the discussion in the plaintiff’s brief is devoted to this objection. The argument for the plaintiff is on the theory that its own title is exhibited by the resolution of the board, accepting the offer of the Gun Olub, the proof of the unincorporated association of that name and that no other club bore it, supplemented by testimony that the membership of the plaintiff corporation is composed of those or some of them belonging to the Gun Olub. On this supposed basis of title, the theory of the plaintiff is, that the resolution for the sale to the Gun Olub precludes any proof to ascertain from whom came the offer to buy in order to fix those intended by the resolution of acceptance. The argument supposes that all such testimony infringes on the prohibition of parol to affect that title the plaintiff *1084 conceives it exhibits. In view of the parol necessarily administered' by plaintiff the objection is forcibly suggested it might be made by the other club holding the title by authentic act. Civil Code, Art. 2275; Shepherd vs. Percy, 4 Martin, 275; Heiss vs. Cronan, 12 An. 213; Bradford vs. Cook, 4 An. 229. Bub, in our view, the resolution of the board accepting the offer to buy is not the title. Nor is there-any sanctity attached to the resolution of a corporate body using the terms “the Gun Club,” without other designation, that pre- • eludes proof of the parties intended. The tendency of the testimony was to show the offer came from Mr. Jacobs and his party, and that-they proposed to form a gun club. There is no marked inconsistency, if any, between the resolution and the testimony. Resolutions-are not usually framed with technical accuracy, and the framer might well use the terms “The Gun Club” to denote individuals, proposing such organization, and in no point of view it seems to us,, can there be any objection to testimony explanatory of a resolution, offered to show the parties making the offer accepted as coming-from the Gun Club. Then again, the allegation in plaintiff’s petition substantially is, that the property designed to be sold to the Gun Club-was fraudulently conveyed to Jacobs and his party. When the title of a party is thus assailed, it is surely competent for him to meet the issue by proof there was no such diversion, but that the offer, the-acceptance and the resolution all indicated [those to whom the conveyance was actually made. The ruling of the court admitting the testimony was entirely correct.
The argument for the defendant attacks the capacity of the Shreveport Gun Club to acquire property because the number of' corporators required by law did not concur in the organization (Act No. 112 of 1888). It is also contended that the resolution proposing a sale to the club, there was no power in Mr. Jacobs and his party, termed in the brief the promoters of the organization, to bind it hence the conclusion is deduced that there was no contracting party to buy. Finally, it is claimed there was no sale because it was not ratified. If the sale to Mr. Jacobs and his party is maintained, • it is immaterial to whom, whether a corporation or an individual they conveyed, for the first conveyance disposed of the property The other objection that supposes there was no contracting party answered, we think, by the fact that the vendor alone was concerned on that point. The board sold to parties who did bind them *1085 selves and paid the price. The sale by the board itself required no ratification. The ratification required by the resolution on that subject referred to sales by the agent, the natural import of ratification.
We have thus considered the objections urged by the plaintiff to the testimony supporting the title of the defendant club. We have given attention to the plaintiff’s argument impugning the contract by which the board sold and contesting the capacity of the Shreveport Gun Club. But of what pertinence is the discussion in the brief -of plaintiff on these points, if it exhibits no title from the Levee Board? The petition assails the title of the defendant club. The preliminary contention for the plaintiff is to show title in itself. Until that burden is discharged the plaintiff can not call in question the title of the other. What then is the proof adduced by plaintiff to support its pretensions ? It is the resolution of the board, the proof of the existence and membership of the Gun Club when the resolution of acceptance was adopted. But no conveyance. On the defendant’s argument there can be no further testimony, save and except, that which it conceives is essential to show the relation between the Gun Club and the plaintiff corporation. Thus, with no vestige of any conveyance to itself, the plaintiff seeks to overthrow that under which the defendant club holds the property for the price paid, stipulated in the deed. If the controversy is to be determined on the narrow lines maintained by plaintiff, then plaintiff stands solely on the resolution accepting the offer of the Gun Club, with the aid that can be deemed afforded by the very restricted testimony the argument indicates. On the other hand the defendant club presents itself with the legal title by authentic act, first to the Jacobs party and by them to the defendant. The first conveyance is executed the day the resolution is passed, lull of significance of the intention of the resolution and carrying the presumption of conformity of the resolution and the deed. In that condition of the record it is difficult to perceive the basis of the judgment the plaintiff seeks.
The defendant club with the legal title needs no testimony except to repel an attack. But in our view the testimony produced confirms the conveyance to the defendant. It is shown the offer to buy was made through the land agent of the board by Mr. Jacobs, Enders and Wells; it was considered, referred, and after the com *1086 mittee had visited the land and reported the resolution of acceptance was adopted. There is no suggestion, as we read this record, of any other offer before the board. There is no ground to attribute any agency in the matter for the Gun Olub, if, indeed, any such mandate under the stern exaction of our law on the subject could be shown by any evidence in plaintiff’s hands. True, we gather from the record there was an idea of some of the members of the Gun Club the purchase was proposed for that club. There seems to have been expressions from the purchasers, apt, perhaps, to produce that impression. But nothing of this nature in this record could possibly furnish that basis exacted by our law to decree the ownership of immovable property. It is stated in the plaintiff’s brief that the agent testified he made the offer for the Gun Club, but in another part of the testimony he testifies he does not know whether or not the offer was made for the unincorporated club, or for what club-it was made. It is quite certain from the testimony that the proposition came from those to whom the land was conveyed, and Mr. Jacobs testifies he stated to the agent he proposed to buy for the Gun Club to be formed. Prom first to last in the testimony we find no trace of any agency or trust or substitution of any contract when another was intended. The current of proof is that the Jacobs party negotiated for themselves, and took the title in pursuance' of that purpose. We concur in the opinion of the lower court there is no title in plaintiff. In our view the defendant has exhibited title, and it must be maintained, unless the contention of the Levee Board is maintained. ,
We have considered the ground of lesion alleged by the Levee-Board. It is suggested that in this respect there is an inconsistency with the other issue made by intervention, but waiving that, the testimony does not, in our view, sustain the alleged lesion. The price paid was one thousand one hundred dollars. Lesion supposes fraud on the vendor. Inferred as is the fraud from inadequacy of price, that disproportion the law exacts shall be clearly established. Civil Code, Art. 2589 et seq.; Bossier et al. vs. Vienne et al., 12 Martin, 421; Riviere vs. Boissiere, 5 La. 382. The land in this case was subject to overflow, the resort of sportsmen, and its purchase seems to have been sought for hunting purposes. We gather from the record the suggestion of a disputed title, an element for consideration, but its force, the record does not enable us to estimate. Copley vs. *1087 Flint & Cox, 16 La. 380. Irrespective of that, if the land had any value except as a hunting ground, it seems to have been purely speculative. There are in the record some valuations of this character on which, in our view, no judgment could rest avoiding the sale. There is testimony tending to show a fair price was paid, and a witness for the defendant, familiar with the land, testifies he would have bought for any price. We have no indication of the testimony relied on to sustain the alleged inadequacy of price, and our examination of the testimony leads to the same conclusion as that of the lower court, that the contention of the board on this point fails.
The lower court admitting all the testimony, holding that no offer came from the Gun Olub, but did come and was accepted, from Mr. Jacobs and his associates, and rejecting the plaintiff’s demand, yet reached the conclusion that the sale should be annulled. As we appreciate the opinion, it holds the resolution proposed a sale to a club, not to individuals; that no proof was admissible to substitute the purchasers for a gun club, therefore the sale to Jacobs and his associates was not authorized; that all sales were to be ratified, and that this sale was never ratified, but repudiated by the board. In this ease there is a sale by the corporation in pursuance of the reso - lution accepting the offer. It can not, in our opinion, be maintained that the corporation could dispute such a sale upon the ground, the sale should have been to a gun club. Nor do we think, if any controversy arose after that sale was executed in reference to the purchasers intended, there could be any objection to testimony that the proposition considered and accepted by the board came from the parties to whom the title was conveyed. At the meeting when this offer was made through the land agent, there was a proposition to abolish the land agency, and at a later period a resolution passed, requiring all sales to be ratified by the board. We think it is foreibley suggested the ratification proposed referred to sales by the agent. Ratification in its usual sense refers to the action of a principal approving the act of another for the principal. We think that sense must, in this case, be attributed to the ratification required. The sale by thex corporation, in pursuance of an acceptance ,by the board of directors, binds without ratification. We can not hold that the resolution, in this case, required the ratification of the corporate act, if indeed the sale itself, following the resolution accepting the offer, was not a ratification. '
*1088 The opinion lays stress on the fact that the character of the Shreveport Gun Club does not conform to the statute requiring twenty-five signatures. But if the conveyance to Mr. Jacobs and others divested the title of the board, it is of rio concern to it, to whom the land was afterward conveyed. The board was to sell for cash and it has been paid. Without the slightest injury to itself, we can not appreciate the basis on which the board can expect to set aside the sale, on the ground the sale should have been to a club instead of to the individuals who made the offer, and afterward formed a club, the method of the organization of which is, in our view, of no moment to the board.
We have had no brief from the board, but have sought to accord attention to the grounds of the intervention and those presented in the oral argument, as well as to the opinion of the lower court, and our conclusion is, the sale must be maintained.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed in so far as it dismisses plaintiff’s suit, and reversed in so far as it maintains the intervention and annuls the sale to W. B. Jacobs, S. J. Enders, A. F. Jenkins and W. S. Penick; and it is now ordered and decreed that the sale to them be and is hereby maintained, and the intervention be and is hereby dismissed with costs.