**76 So.2d 907**

**George M. FOOS**

**v.**

**John C. CREAGHAN et al.**

**No. 41577.**

Dec. 13, 1954.

Durrett & Hardin, Baton Rouge, for appellant.

A. Leon Hebert, Jr., Baton Rouge, for appellees.

McCALEB, Justice.

On March 1, 1949, plaintiff conveyed to the defendants 288 acres of land situated in East Baton Rouge Parish for $11,000, reserving to himself the entire mineral interest but granting to his vendees a 1/16th royalty in any production which might thereafter be obtained from mineral explorations. Eighteen days later, defendants sold all of the merchantable timber on the tract to one Henry Raziano for $15,000, the latter being given three years to cut and remove it. After the expiration of the term of that contract, defendants made another sale of the timber on the tract to M. L. Harvey for $4,000. In the following month (February, 1953), plaintiff filed the instant suit to have the sale of March 1, 1949, set aside for lesion beyond moiety, asserting that the value of the tract at the time of the transfer exceeded $35,000.

Defendants joined issue by denying the claims of plaintiff and the case was tried by a jury,[1] which rendered a verdict for defendants. Plaintiff then applied for a new trial on the ground that the verdict was contrary to the law and the evidence, but the judge denied the motion and entered judgment in favor of defendants. Wherefore this appeal.

The law of lesion is found under two separate titles of our LSA–Civil Code. It is first set out in Articles 1860–1880 under Title IV "Of Conventional Obligations", being paragraph 10 of Section 2 of Chapter 2 thereof, which treats of the requisites to the formation of a valid agreement. It also appears under "Sales", Title VII of the Code, specifically in Articles 2589–2600, comprising Section 2 of Chapter 8, which deals with the resolution or rescission of sales. The provisions invest the vendor of an immovable with the right to demand a rescission of the sale for lesion when the consideration given is less than one-half of the value of the property at the time of the sale. Articles 2589 and 2590. The basis of the remedy is that a vendor, who has sustained injury to the extent of more than one-half the value of the immovable conveyed by him, will be regarded as having acted in error or to have been imposed upon by the purchaser, irrespective of whether such error or imposition exists as a matter of fact. Articles 1860, 1861 and 2589 of the LSA–Civil Code; Fernandez v. Wilkinson, 158 La. 137, 103 So. 537 and Blaize v. Cazezu, 210 La. 176, 26 So.2d 689. Therefore, there is only one issue of fact to be decided in this type of case, i. e., whether the vendor has sold the immovable for less than one-half of its value, to be determined, according to Article 2590, as of the time of the sale. And, under the jurisprudence, the highest estimate will not

1. Conformably with defendants' prayer.

generally be accepted in ascertaining the true value of the property forasmuch as all estimates above the lowest have been characterized as conjectural, the burden being upon the plaintiff to establish his case by strong and convincing proof. Parker v. Talbot, 37 La.Ann. 22; Martin v. Delaney, 47 La.Ann. 719, 17 So. 264; Girault v. Foucht, 120 La. 1070, 46 So. 26; Succession of Witting, 121 La. 501, 46 So. 606; Hyde v. Barron, 125 La. 227, 51 So. 126 and White v. Bergstedt, 164 La. 993, 115 So. 59.

■ A perusal of the record in this case convinces us that plaintiff has fallen far short of establishing with legal certainty his claim of lesion beyond moiety. Hence, the jury did not err in finding for the defendants and the judge properly refused to set aside the verdict. The tract involved was 288 acres of cut-over land situated in the southern part of the Parish of East Baton Rouge, being partially bounded by Bayou Manchac near its junction with the Amite River and subject to frequent overflow by both of these bodies of water.

To establish his case, plaintiff produced two real estate men who estimated that the property was worth on the date of the sale (March 1, 1949) $40 per acre, or $11,520, without the timber. And his witness, R. J. Freshwater, a graduate forester of ten years experience, who estimated the value of the timber by the "mechanical sampling method", said that it was worth $14,652.54 on the date of the sale.

Opposed to this evidence is that of defendants' expert, J. P. Brashears, a man of over forty years experience in the timber business, who valued the land with timber at $45 per acre, or $12,960; and that of a realtor, Bradley Mittendorf, lay witnesses A. J. Harelson and Sam Dupree, who say that the land, without the timber, was worth only $20 per acre, or $5760, and the lay witness, Ray Hood, who estimated the land with timber to be worth $40 per acre, or $11,520. In addition to this is the evidence of plaintiff himself, an intelligent and successful business man who, as the owner of many acres of timber lands in the same vicinity, was fully cognizant of the sound value of the property and who stated that he believed that the consideration he received was a fair price for the tract.[2]

It appears to us that the evidence produced by the defendants clearly preponderates. However, it could not fairly be said under any view of the facts that the jury and the judge committed manifest error in preferring the defense testimony to that of plaintiff's witnesses.

It seems obvious that the litigation emanated as a result of defendant's sale of

2. In adverting to plaintiff's testimony as contradictory of the allegations of his petition, we do not mean to imply that he was in any way bound by his belief at the time he sold the land. However, since he was shown to be well versed in the value of timberlands, his testimony on this question, like that of any other qualified witness, may be considered in determining the issue.

timber to Harvey for $4,000 three years after Raziano had bought it for $15,000, which would tend to exhibit that the property was worth considerably more than the price received by plaintiff. However, these transactions are fully explained by the testimony which reveals that Raziano paid an excessive price for the timber because he was unable, due to the overflow of the land, to remove all of the trees therefrom. It was estimated by one of defendants' witnesses that the value of the timber that Raziano was able to remove was about $8,000 or $9,000. The subsequent sale to Harvey represented that part of the timber which Raziano could not remove during the time his contract was in force.

The judgment appealed from is affirmed.